SCOTIABANK DE PUERTO
RICO, Plaintiff,

v.

M/V ATUTI, its engines, tackle, equipment and furnishings, etc. in rem, Luis Miguel Garcia Passalacua, his wife Margarita Juarez Iturregui and the Conjugal partnership constituted between them, in personam, Defendants

No. CIV.03–1990 PG.

United States District Court,
D. Puerto Rico.

July 19, 2004.

Carlos A. Garcia–Perez, Esq., Victor J. Quinones–Martinez, Esq., Goldman Anto-

netti & Cordova, San Juan, PR, for Plaintiff.

Alfredo Fernandez–Martinez, Esq., Patricia Lorenzi, Esq., Delgado & Fernandez, San Juan, PR, for Defendants.

## OPINION AND ORDER

GELPI, United States Magistrate Judge.

This is an action in admiralty brought by plaintiff Scotiabank de Puerto Rico ("Scotiabank") against the M/ V ATUTI ("ATUTI"), its engines, tackle, equipment and furnishings, etc. *in rem*, Luis Miguel García–Passalacqua, his wife Margarita Juárez–Iturregui and the conjugal partnership constituted between them, *in personam*, ("defendants") for maritime attachment and garnishment of defendants' property. This cause is within the admiralty and maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333, Fed. R. Civ. 9(h), and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

The issue presently before this Court is whether the defendants are entitled to the issuance of an order directing plaintiff to post a bond in the amount of $ 200,000.00 to cover damages for alleged depreciation to the ATUTI, as well as expenses, stemming from the vessel's arrest and custody, as a result of this action. Defendants have filed a motion requesting the same (Docket No. 32), and plaintiff has duly opposed it (Docket No. 37). For the reasons that follow, defendants' motion is hereby DENIED.

### I. *Factual Background*

Scotiabank, a subsidiary of the Bank of Nova Scotia, is a business entity organized and existing under the laws of the Commonwealth of Puerto Rico. The ATUTI is an American flag vessel owned and operated by the defendants. On September 24, 1999, defendants executed a First Pre-ferred Ship Mortgage ("Mortgage") Securing a Promissary Note ("Note") with Scotiabank on the ATUTI to secure all the obligations as evidenced by a Note in the amount of five hundred sixty seven thousand two hundred dollars ($567,200.00) with interest at the rate of 8.75% per annum, and payable in fifty nine (59) monthly instalments of $5,012.24 commencing on the 24th day of October 1999. *See* Docket 1 at p. 2. The Mortgage provides that in the event of default, payment of all sums due and owing under the Mortgage would be accelerated, and that Scotiabank as the mortgagee has the right to (a) peacefully repossess the vessel without court order, (b) foreclose in the federal court under the maritime laws of the United States, and/ or (c) take such other legal action as permitted under any applicable law. On July 6, 2001, defendants defaulted on the Mortgage by failing to pay under its terms. On December 13, 2001, the parties filed a stipulation by which defendants recognized the debt and agreed to pay Scotiabank the principal amount of $40,099.28 and $3,764.00 for attorney's fee and costs, for a total amount of $43,773.28. Defendants have remained in default to this date, without making any payments in accordance with the terms of the Mortgage. *See* Docket 21.

Defendants have failed to timely pay their monthly installments on time at least on nineteen (19) occasions. On September 5, 2003, defendants sent payment for the month of July forty-three (43) days past due. Scotiabank exercised its right to accelerate payment of the remaining balance. When the balance was not satisfied by defendants, Scotiabank proceeded to request the arrest of the ATUTI, through a procedure before this Court. *See* Docket 21 p. 2–3. On June 9, 2004, Scotiabank obtained an order signed by U.S. District Judge Juan M. Pérez–Giménez for the in-

terlocutory sale of the ATUTI. *See* Docket 31.

## II. *Legal Analysis—Relief as to damages caused to the vessel while under plaintiff's custody*

"When a vessel or other property is brought into the marshal's custody by arrest or attachment, the marshal shall arrange for adequate safekeeping, which may include the placing of keepers on or near the vessel. A substitute custodian in place of a marshal may be appointed by order of the Court." L. Adm. R. E(1)(1) (2004). It is a common practice when arresting a vessel to make arrangements for a substitute custodian in place of the marshal to take legal custody of the vessel after the vessel has been seized. *See* 8 *Benedict on Admiralty* § 3.02 (7th ed.2004).

■ "The duty of a marshal with respect to property which he seizes by virtue of a legal warrant is that he keeps such property, while in his custody, in a safe and secure manner so as to protect it from injury to the end that, whether it be condemned or restored to the owner, its value to the parties will not have been impaired by unnecessary deterioration or damage for which the custodian could be responsible." *Matoil Service & Transp. Co. v. Schneider,* 129 F.2d 392, 394 (3rd Cir. 1942).

■ A substitute custodian is held to the same standard of care as the U.S. Marshal, which is essentially a reasonable standard of care. *New River Yachting Ctr. Inc. v. M/ V Little Eagle II,* 401 F.Supp. 132, 136 (S.D.Fla.1975).

### 1. *Were the costs of removing the M/V ATUTI to a dry dockage reasonable?*

■ The defendants allege that the decision of the plaintiff to remove the ATUTI to a dry dockage was arbitrary and unnec-

essary and created "great deterioration" to the vessel. The defendants further claim that the costs incurred in getting the vessel out of the water should not be deducted from the proceeds of the sale. The defendants, however, have failed to articulate well-evidenced reasons as to why the removal resulted in "great deterioration" to the vessel or why the action of the removal was "arbitrary and unnecessary".

The Court authorized the removal of the vessel to a dry dockage because it reduced the risk of the vessel being sunk. The removal prevented the acceleration of the corrosion of the electric cable system and other parts of the motor that occurs due to the continuous exposure to sea water. *See Statement Under Penalty of Perjury of Substitute Custodian, Paul D. Simpson* (Docket 37, Exhibit A). The Court does not consider such costs unreasonable *per se.* These types of expenses are routinely collected by the marshal or substitute custodian. In fact, 28 U.S.C. § 1921 provides the following:

(1) The United States marshals or deputy marshals shall routinely collect, and a court may tax as costs, fees for the following: . . . (E) The keeping of attached property (including boats, vessels, or other property attached or libeled), actual expenses incurred, such as storage, moving, boat, hire or other special transportation, watchmen's or keepers' fees, insurance, and an hourly rate, including overtime, for each deputy marshal required for special services, such as guarding, inventorying, and moving.

■ As in the case of a marshal, a substitute custodian of an arrested vessel is also entitled to payment of custodian and dockage fees by plaintiff. *New River Yachting Ctr.,* 401 F.Supp. at 136. These fees are not considered "costs as defined under 28 U.S.C. § 1916 but are fees routinely collected by U.S. Marshal under 28

U.S.C § 1921." *Shultz v. M/V Elinor,* 819 F.Supp. 1068, 1069 (S.D.Fla.1993). Therefore the costs of removing the vessel should be deducted from the proceeds of the sale as the action was carried out in the best interests of the vessel. *See* Docket 37 at p. 4.

## 2. Did the substitute custodian exercise its duty of care and keep the ATUTI in a safe and secure manner?

 The defendants allege, without presenting any evidence to the effect, that when the ATUTI was arrested, it was in "mint condition, well kept and maintained." The defendants claim that the substitute custodian breached its duty of care by failing to provide adequate maintenance and safekeeping to ATUTI. The defendants further claim that because of the alleged breach, the ATUTI is in a "complete state of deterioration," and as consequence it cannot be sold.

The defendants fail to mention that work has done to the ATUTI in its motor and that the same had to be reconstructed before it came under the custody of the substitute custodian. *See* Statement of Substitute Custodian (Docket 37, Exhibit A). The subsequent effects of these repairs, as well as the reductions in value and the alleged difficulty in selling the ATUTI, were not caused by the substitute custodian. Its duty of care extends only to property actually in its custody. *See Matoil Serv. & Transp. Co,* 129 F.2d at 394.

The only damage to ATUTI that occurred under the substitute's custody was the theft of the small motor of the dingy. This theft occurred even though the substitute custodian has provided for continuous surveillance of ATUTI. In *New River Yachting Ctr., Inc., supra,* personal prop-

erty worth $730.00 was stolen from the boat while in control and custody of the substitute custodian. The court ordered the custodian to pay for the stolen property, but did not find him negligent in the performing of custodial functions. 401 F.Supp. at 137. Therefore, the theft of the motor of the dingy does not impair the value of ATUTI and does not render the substitute custodian as negligent in performing of its functions. The estimated value of the stolen motor is $2,200.00, which the custodian accepts will be accounted for and re-installed. *See* Docket 37 at page 5.

## 3. Is plaintiff obligated to post an arrest bond?

 The defendants further ask the Court to order Scotiabank and/or the substitute custodian to post a $200,000.00 bond because the ATUTI is not in the same condition as it was found when arrested. The defendants cannot blame the custodian for normal depreciation as this constitutes normal wear and tear. "What is normal depreciation must be responsive to practices in the service for which the vessel is intended...." *Moran Towing Corp. v. M.A. Gammino Constr. Co.,* 363 F.2d 108, 114 (1st Cir.1966). Scotiabank does not have to compensate defendants for normal wear and tear. "Section 2465 provides to a successful claimant only the return of his property, not the depreciation of the asset during the time it was in control of the government. If Congress had intended the government not only to return the seized property during the period of government custody, it presumably would have so stated or indicated...." *United States v. Silvers,* 932 F.Supp. 702, 705 (D.Md.1996).[1] Therefore, there is no

---

1. Section 2465(a) provides: "Upon entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be

need for the posting of a bond when the only deterioration of the ATUTI is due to normal wear and tear.

### III. *Conclusion*

For the reasons stated herein, the Court DENIES defendant's motion for imposition of bond (Docket No. 32). However, plaintiff is ORDERED to pay for or reinstall the ATUTI's stolen dinghy motor.

**SO ORDERED.**

returned forthwith to the claimant or his agent; but if there appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution." 28 U.S.C. § 2565 (2004).